Mrs. Lilo COON, Mrs. Barbara Jo Johnson and Mrs. Jonabelle Conway, Plaintiffs,

v.

Mrs. Flora C. TINGLE, Honorable Lester Maddox, Governor, State of Georgia, Honorable Arthur K. Bolton, Attorney General, State of Georgia, Thomas J. Barkett, d/b/a Delta Liquor Store, and Leo R. Amiel, d/b/a Leo's Liquor Store, Defendants.

Civ. A. No. 10531.

United States District Court
N. D. Georgia,
Atlanta Division.

June 19, 1967.

———⋄———

John William Malone and Candler Crim, Jr., Atlanta, Ga., for plaintiffs.

William Miller, Atlanta, Ga., for Tingle, Barkett and Amiel.

Arthur K. Bolton, Atty. Gen., William L. Harper, Asst. Atty. Gen., Joel M. Feldman, Deputy Asst. Atty. Gen., State of Georgia, Atlanta, Ga., for Governor Lester Maddox and Arthur K. Bolton.

Before GRIFFIN B. BELL, Circuit Judge, and LEWIS R. MORGAN and FRANK A. HOOPER, District Judges.

HOOPER, District Judge.

Plaintiffs in this case seek to have a state statute declared unconstitutional and its enforcement enjoined. The statute provides:

> "No female shall be allowed to work in any liquor store as hostess, bar maid or in any manner whatsoever." Georgia Code § 58–1062.

Plaintiff contends that this statute is unconstitutional because it deprives females of the equal opportunity of employment under the Fourteenth Amendment and also under Title 42, Section 2000e–2 (a) (1) of the United States Code (Civil Rights Act of 1964).

Because this action seeks an injunction against the enforcement of a state statute it was necessary to convene a three-judge court. 28 U.S.C.A. §§ 2281 and 2284.

The facts have been stipulated. Plaintiff Lilo Coon sought employment in defendant Flora Tingle's liquor store as a clerk in 1966.[1] She was refused solely on the basis of her sex. Plaintiff Barbara Jo Johnson applied for a position as clerk in defendant Mrs. Leo R. Amiel's store and in defendant Thomas J. Barkett's store. She too was otherwise qualified but was denied on the basis of her sex. The third plaintiff, Mrs. Jonabelle Conway, is an accountant employed by an accounting firm. She was refused a position to take inventory in Mr. Barkett's store solely because she was a female.

The parties have agreed that a clerk in a liquor store does not handle or serve opened liquor. Their duties are limited to the passing of sealed bottles from shelves to customers, putting the bottle in a sack, and transacting the cash sale. It is also undisputed that females are employed throughout the state in cocktail lounges, bars, and restaurants as hostesses, waitresses, cashiers and bartenders.

The parties have stipulated that no retail package liquor store licensed to do business in Georgia has ever employed as many as twenty-five employees at any one time. The term employer is

---

1. Mrs. Tingle gave up her license to operate a retail liquor store at the beginning of 1967 and is no longer in business.

defined by the Equal Employment Opportunities section of the Civil Rights Act of 1964 as:

"The term 'employer' means a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b).

■ Thus it appears this action is not maintainable under the Equal Employment Opportunities section of the Civil Rights Act of 1964. This Court does have jurisdiction under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983.

Besides the three above named owners of liquor package stores the only other defendants are the Governor and the Attorney General of Georgia. The parties have stipulated that the defendant store owners are willing to, and desirous of, hiring female employees in their enterprises. Thus, it appears there is no case or controversy between these owners and the plaintiffs. Their interests are the same.

Upon oral argument of this matter a question arose as to whether the Governor and the Attorney General were proper parties. It was asserted by counsel for the latter that the Revenue Commissioner was responsible for the enforcement of the statute under attack. However, no motion has ever been made to dismiss the Governor and Attorney General as parties.[2]

In Fitts v. McGhee, 172 U.S. 516, 530, 19 S.Ct. 269, 274, 43 L.Ed. 535, the Supreme Court said:

"In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former as the executive of the state was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

Later, in Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 453, 52 L.Ed. 714, the Court quoted the above language from Fitts v. McGhee and further stated:

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed ([Reagan v. Farmers' Loan & T. Co.] 154 U.S. 362, 366 [14 S.Ct. 1047, 38 L.Ed. 1014], § 19 of the act), but that may possibly make the duty more clear; if it otherwise exist it is equally efficacious. The fact that the state officer by virtue of his office has some connection with the enforce-

---

2. At the hearing the assistant attorney general stated he was hesitant to so move because a ruling in his favor would leave no interested party to urge the validity of Georgia Code § 58–1062.

ment of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."

See also Camacho v. Rogers (S.D.N.Y. 1961), 199 F.Supp. 155; Massachusetts Farmers Defense Committee v. United States (D.C.Mass.1939), 29 F.Supp. 941.

This matter was heard by the Court over thirty days ago. Since that time no effort has been made to have the Revenue Commissioner named as a party. Further, no authority has been cited to justify these proceedings to continue with the Governor and Attorney General as defendants. The Court on its own motion is ordering this case dismissed for failure to state a claim for relief against the Governor and the Attorney General of Georgia, and for want of a case or controversy between the plaintiffs and the remaining defendants.

In light of the disposition made of this case a further comment seems in order. Assuming that the plaintiffs had been diligent and made the Revenue Commissioner a party to this action it may well be that still the Court would have not reached the constitutionality of the statute under attack. This is because of the doctrine of abstention, the exercise of which seems appropriate here, as urged by counsel for the Governor and the Attorney General.

Abstention is the judicial tool by which a federal court avoids reaching a constitutional question pending a ruling on a question of state law by the court most suited for that purpose, a state court. Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This is done when a decision on the state question may render the constitutional question moot and thereby dispose of the case. It is a matter vested in the discretion of the trial court. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); Coun-

ty of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). However, in the absence of "special circumstances" it should not be exercised. Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480; Meredith v. Winter Haven, 320 U.S. 228, 236, 64 S.Ct. 7, 88 L.Ed. 9. The Court is of the opinion that "special circumstances" are present in this case.

The state law here is vague as to whether it applies to these plaintiffs. The statute reads:

"No female shall be allowed to work in any liquor store as hostess, bar maid or in any manner whatsoever." Georgia Code § 58–1062.

There is a question as to the meaning of the words "liquor store". Its common meaning connotes a store where certain alcoholic beverages are sold in unbroken packages for consumption off the premises. However, this type of store does not ordinarily employ hostesses or bar maids. Further, when the law under attack was passed it was illegal in the State of Georgia to sell alcoholic beverages other than in this type of store.

Under the doctrine of ejusdem generis the general words in the statute, "in any matter whatsoever", must be limited to the enumerated special subjects and to include only those things of the same nature as those specifically enumerated. See Jenkins v. Jones, 209 Ga. 758, 761, 75 S.E.2d 815. This, however, cannot be done if the words "hostesses" and "bar maids" are taken as mere surplusage.

The Court is of the opinion that the determination of the legislative intent in enacting this statute should be properly left to the Georgia courts. Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 2d 562 (1959). The statute has never been construed by the state courts. See

**308**

Harrison v. N.A.A.C.P., supra, 360 U.S. at page 176, 79 S.Ct. 1025. It is a part of a comprehensive enactment, Ga.Law 1937-1938, p. 103, regulating the liquor industry. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Since the passage of the Twenty-First Amendment the control of the liquor traffic has been left to the states. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L. Ed. 1424 (1938).

Lastly, the Court would be compelled to abstain because this is a criminal statute. Section 20 of Georgia Laws 1937-1938, pp. 103, 121, of which Georgia Code § 58-1062 is a part, provides:

> "Whoever violates any of the provisions of this Act for which no specific penalty is provided, or any of the rules and regulations issued under authority of this Act, and in accord with the provisions of this Act, shall be guilty of a misdemeanor, and upon conviction, shall be punished as for a misdemeanor as provided in section 27-2506 of the Civil Code of 1933."

A federal court should not interfere with a state's enforcement of its criminal laws. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1962); Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); cf Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

In summary, if the Court had not been compelled to dismiss this case on the grounds stated, it would have felt justified in abstaining from an adjudication of the constitutional question until a definitive ruling by the state court on the applicability of the state law to the plaintiffs could have been rendered. The statute is vague. The area it covers is one for the sovereign prerogative of the state, i. e. control of the alcoholic beverage industry. It is a state criminal law not open to attack by way of injunction in a federal tribunal.

An appropriate order will be entered dismissing this case in accordance with this opinion.